UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRANDON RAYMOND BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:19-CV-358-ECM-WC |
| | ) |
| LT. KING, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' SPECIAL REPORT AND ANSWER**

COME NOW Houston County, Alabama Sheriff Donald Valenza, Jail Commander James Brazier, Lt. James Trawick, Lt. Sharon King, and Sgt. Melinda Peterson, Defendants in the above-styled cause, and submit their Special Report and Answer to the Court as follows:

**INTRODUCTION**

The Plaintiff filed his Complaint in this action on May 21, 2019 and Amended Complaint on June 19, 2019.  The Defendants have been ordered to submit a Special Report and Answer.

**PLAINTIFF'S ALLEGATIONS**

In the Complaint, the Plaintiff alleges that he has been incarcerated in unconstitutional conditions in the Houston County Jail.  Plaintiff claims that from April 2, 2019, through May 22, 2019, he was in danger through his position as a kitchen worker because of the presence of snakes in the kitchen and due to the length of the inmate worker shifts.  Plaintiff further complains that he was not provided with safe footwear, that the jail commercial dishwasher does not adequately clean the trays and that jail meals were served at an improper temperature.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS**

The Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact. The Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

**I.   FACTS**

During the incarceration at issue in this lawsuit Plaintiff was a convicted inmate and a pretrial inmate on his current charges. Plaintiff has been booked into the Houston County Jail multiple times. His relevant incarceration dates are a booking date of March 7, 2019 and a release date of June 21, 2019.

The Houston County Sheriff's Office operates the Houston County Jail according to a written set of policies and procedures which govern the conduct of persons employed at the jail.

All deputies at the Houston County Jail are charged with the responsibility of reporting infractions by fellow deputies and reporting any problem to the senior deputy present immediately upon learning of the problem.

Defendants had no indication that jail training, policies, procedures or supervision were likely to result in violations of an inmate's constitutional rights. There is no history of abuse by correctional officers or medical staff in the Houston County Jail.

The Houston County Jail has a grievance policy for inmates to express complaints. When an inmate has a grievance, the inmate may submit a grievance to jail staff. Inmates use a kiosk to submit grievances and other types of communication to jail staff. If a kiosk is not functioning, inmates are provided with paper forms to communicate with jail staff. A grievance will be promptly investigated and answered by a member of jail staff. Most grievances are answered by the grievance deputy. Grievances of an emergency nature may be made orally and are handled immediately. No negative

action will be taken against an inmate as a result of filing a grievance.  If an inmate is dissatisfied with the response to the grievance, he or she may appeal in writing up the chain of command to the Sheriff.

A copy of the Houston County Jail Inmate Rulebook, which contains instructions for submitting a grievance and other jail rules, is issued to each inmate as part of the booking process. Inmates, including Plaintiff, are well aware of the grievance procedures in place in the Houston County Jail.

To Defendants' knowledge, the Plaintiff did not submit a grievance regarding the allegations contained in this lawsuit other than the length of kitchen shifts. Defendants have never received an appeal from the Plaintiff regarding any grievance that he has filed.  Defendants never refused to accept a grievance or an appeal from the Plaintiff.  Thus, Plaintiff has failed to follow the grievance procedure in place at the Houston County Jail.

In approximately April 2019, Commander Brazier and other jail officers received reports from Corrections Deputies and from a Trinity (the food service company to the jail) employee in the kitchen that a snake had been seen in the part of the kitchen where seldomly used equipment was stored.  This snake was reported to me to be to be a white oak or rat snake. I did not receive any report that a snake scared, touched or harmed an inmate or a member of jail or Trinity staff. At this time a seldomly used bean kettle, deep fryer and serving line were stored in one part of the kitchen.  Most likely, these items had food or moisture residue and dark hiding places that were attractive to a snake.  Further, the jail is built in close proximity to a creek and two retaining ponds where snakes have been seen.

Commander Brazier and other jail officers were made aware that Corrections Deputy Lisenby attempted to catch this snake but was unable to as it crawled in the bean kettle.  It was also reported that other Correction Deputies attempted to locate the snake and were unsuccessful.

The bean kettle was welded shut so it could not be opened by officers. As soon as Commander Brazier received these reports, he contacted the Houston County Maintenance Department so that these pieces of equipment could be removed from the jail kitchen and the area thoroughly cleaned. All three of these pieces of kitchen equipment were hooked up to either electricity or gas lines and had sections that could not be opened for cleaning. Shortly thereafter, this equipment was removed, and the area cleaned. No snake was seen at this time. Commander Brazier and jail officers have received no reports of a snake being seen in the kitchen since this equipment was removed.

Occasionally, an inmate will report seeing a snake in a pod. Commander Brazier did not receive such a report during the Plaintiff's incarceration.

After this snake was seen in the kitchen inmate workers were not stationed near this equipment.

On occasion, inmate workers have worked a twelve hour shift due to worker shortages caused by an inmate being unable to work or being released or transferred from the jail. No matter the shift length, inmate workers are provided with adequate breaks.

Had the Plaintiff stated that he did not want to work in the kitchen due to a snake he would not have been subject to lockdown. He would have been transferred to another inmate worker position if a position was available. If a position was not available, he would have been moved back to population.

Inmates at the Houston County Jail are issued slides as footwear. Kitchen workers are given rubber boots to wear in the kitchen due to the amount of water involved in working in the kitchen.


The commercial dishwasher at the Houston County Jail was used for rinsing purposes during Plaintiff's incarceration. Kitchen workers washed dishes in a three-step process which involves washing trays by hand with a dishwashing soap and then sterilizing trays by hand with either a bleach or other solution. The trays are then rinsed in the dishwashing machine. Trinity kitchen workers oversee all kitchen inmate workers. The dishwashing machine has been serviced multiple times by an outside contractor. The dishwashing process was implemented to get the best results from the dishwashing machine and extend the operating life of the machine.

Houston County Jail serves a hot breakfast, a hot lunch and a hot dinner. Meals meant to be served hot are not intentionally served cold at the Houston County Jail. Every effort is made to serve food in a timely manner at the optimal temperature.

On April 20, 2019, Plaintiff, while working as an inmate worker in the kitchen, used curse words and made derogative statements towards a member of the Trinity kitchen staff. Plaintiff pled guilty to this Houston County Jail rules violation on May 1, 2019. Plaintiff did not work in the kitchen following the April 20, 2019 incident.

The Houston County Jail, including the kitchen, routinely passes inspections by the Health Department, from the Grand Jury and from the Federal Marshals.

Jail records establish that Plaintiff suffered no unconstitutional treatment while confined at the Houston County Jail.

(*See* Declaration of Donald Valenza, Declaration of James Brazier; Declaration of James Trawick, Declaration of Sharon King; Declaration of Melinda Peterson; Exhibit A, Relevant Portion of Plaintiff's Inmate records; Exhibit B, Houston County Jail Inmate Handbook).

**II.     LAW**

      **A.     Plaintiff's claims are barred because he has failed to comply with the provisions of by 42 U.S.C. § 1997e of the Prison Litigation Reform Act ("PLRA").**

The Court's adherence to mandates of the PLRA is essential to ensure that the "flood" of frivolous claims for constitutional violations does not burden and hinder the Court's consideration of legitimate claims presented by pro se litigants. *See Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) ("In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ('PLRA').").  As the Supreme Court recognized in *Jones v. Bock*:

> Prisoner litigation continues to "account for an outsized share of filings" in federal district courts. *Woodford v. Ngo,* 548 U.S. ---, ---, n. 4, 126 S. Ct. 2378 (2006) (slip op., at 12, n. 4).  In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations.  [footnote omitted] Most of these cases have no merit; many are frivolous.  Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law.  The challenge lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit.  *See Neitzke v. Williams,* 490 U.S. 319, 327 [] (1989).
>
> Congress addressed that challenge in the PLRA.  What this country needs, Congress decided, is fewer and better prisoner suits.  *See Porter v. Nussle,* 534 U.S. 516, 524, [] (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits").  To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good.  ***Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.***

549 U.S. 199, 202 (2007) (emphasis added).  Uniform adherence to all the provisions of the PLRA, especially the grievance exhaustion requirement, is mandatory for inmate litigants and the Courts to ensure that the federal judicial system can effectively "separate the wheat from the chaff" with regard to claims asserted by inmate litigants.

6

> The first section of the PLRA provides:
>
> ***No action shall be brought*** with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility ***until such administrative remedies as are available are exhausted***.

42 U.S.C. § 1997e(a) (emphasis added).  Under this provision of the PLRA, an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983, and the Court is precluded from granting relief to any plaintiff who has not exhausted <u>all</u> his administrative remedies.  In *Woodford v. Ngo*, the Supreme Court held, "Exhaustion is no longer left to the discretion of the district court, but is ***mandatory***." 548 U.S. 81, 85 (2006) (emphasis added); *see also Booth v. Churner,* 532 U.S. 731, 739 (2001) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards.").  However, as the Supreme Court recognized in *Jones v. Bock*, each prison sets its own parameters for what constitutes compliance with its grievance policy:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ___, 126 S. Ct. 2378 -- rules that are defined not by the PLRA, but by the prison grievance process itself. …. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

599 U.S. at 218.

As previously discussed, the Houston County Jail utilizes an inmate grievance procedure.  The PLRA requires that Plaintiff have filed a grievance regarding each and every allegation of his Complaint and to have exhausted the appeal procedure which regards to each and every complaint. Plaintiff failed to utilize and complete the grievance process regarding the allegations of his Complaint. Thus, Plaintiff has failed to exhaust his administrative remedies and can never exhaust them.  Consequently, these claims are barred.

7

**B.     Plaintiff's claims are barred by the PLRA because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309 (11th Cir. 2002). Should Plaintiff be making any claim for mental or emotional injury, because the Plaintiff has not made an allegation or showing of a physical injury caused by Defendants greater than *de minimis*, his claims are due to be dismissed.

**C.     All claims against the Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

The Plaintiff's claims against the Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. *Parker v. Williams*, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); *Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); *Carr v. City of Florence*, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); *Lancaster v. Monroe County*, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs); Alabama Code § 14-6-1 and § 36-22-3 (extending immunities and legal protections of Alabama sheriff to all person's employed by sheriff and acting under sheriff's supervision). Thus, the Defendants are entitled

to absolute immunity from any claims for monetary relief presented against them in their official capacity.

In addition, the official capacity claim must fail because 42 U.S.C. § 1983 prohibits a *person*, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983. The United States Supreme Court has held that a state official, in his official capacity, is not a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Any claims against the Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983, and therefore any claim against them in their official capacities fails to state a claim upon which relief can be granted. *Id.*; *Carr*, 916 F.2d at 1525 n.3.

### D. **The Defendants are entitled to qualified immunity.**

Should the Plaintiff's individual capacity claims not be found to be barred by the PLRA, the Defendants are entitled to qualified immunity and judgment in their favor as a matter of law. "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To be eligible for qualified immunity, the officers must demonstrate that they were acting in the scope of their discretionary authority. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). The Defendants are clearly alleged to be the Corrections Deputies at the Houston County Jail and the

Houston County Sheriff. The conditions within the Houston County Jail are clearly encompassed within the duties and responsibilities of Defendants. Accordingly, the facts before the Court demonstrate that the Defendants were acting within their discretionary authority. *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).

Once determined that the officers acted within their discretionary authority, courts use a two-part test to determine whether qualified immunity is proper. In *Saucier v. Katz*, the Supreme Court directed courts to use the following two-part test to determine whether qualified immunity applies: First, the court determines whether there was a constitutional violation; second, the court determines whether the constitutional right in question was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Recently, however, the Court abandoned the rigid order of analysis enunciated in *Saucier* and stated that courts are no longer required to first determine whether there was a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

> On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, 129 S. Ct. at 818.

### E. Plaintiff's claim that he was incarcerated in unconstitutional conditions fails.

The Plaintiff cannot show that his conditions of confinement infringed in any way on a federally protected right. There is no constitutional mandate that prisons or jails be made comfortable. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "Maintaining institutional security and preserving internal order and discipline are essential goals that

may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

To establish a conditions of confinement claim, Plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to that condition, and (3) causation." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981) (first element); *Wilson v. Seiter*, [502] U.S. [294, 303], 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); *Williams v. Bennett*, 689 F.2d 1389-90 (11th Cir. 1982) (third element). Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. *Wilson v. Seiter*, 502 U.S. at 290. In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

### 1.    Objective Component

With regard to the objective component, the Eleventh Circuit has held that "*extreme* deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[T]he Constitution does not mandate comfortable prisons." *Chandler*, 379 F.3d. at 1289. In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation in regard to the food served at the Houston County Jail that could be objectively considered "cruel and unusual."

### 2. Subjective Component

Plaintiff cannot show subjective deliberate indifference on the part of the Defendants. "To be deliberately indifferent, Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence a [jail] official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Id.* (quoting *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986). There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions. *Id.* at 837-839. No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not." *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives. *LaMarca*, 995 F.2d at 1536. Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim. *Porter v. Nussle*, 534 U.S. 516, 528 (U.S. 2002).

The Plaintiff cannot show that the Defendants have been deliberately indifferent with regard to the conditions of confinement at the Houston County Jail. The Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any actions of the Defendant constituted cruel and

unusual punishment. In this case, none of the conditions of which the Plaintiff complains constituted an excessive risk to his health or safety. The Plaintiff has not shown or even alleged how he has been significantly injured as a result of any of the alleged conditions. Furthermore, the Plaintiff has not presented sufficient evidence to show that any impairment to his physical, emotional, or mental condition actually resulted from the aforementioned environment. In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not sufficiently alleged that the Defendants knew of or disregarded that risk.

Based on the foregoing, it is clear that the Defendants did not violate the Plaintiff's constitutional rights. Further, the Plaintiff cannot show that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, the Defendants are entitled to qualified immunity. Because the Plaintiff cannot meet the objective or subjective tests as set forth in *Farmer*, *supra*, his conditions of confinement claims are due to be dismissed.

### F. Any claims against the Defendants pursuant to the theory of *respondeat superior* fail.

To the extent that Plaintiff's claims are an attempt to hold any Defendant liable under a *respondeat superior* theory, his claims fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

*Dolihite v. Maughon*, 74 F.3d 1027, 1052 (11th Cir. 1996).

### G. Plaintiff has failed to allege sufficient personal involvement on each claim.

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the Defendant and the constitutional deprivation. *Swint v. City of*

13

*Wadley*, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in indifference to constitutional rights or a breach of a duty-imposed state of local law which results in constitutional injury. *Zatler v. Wainwright*, 802 F. 2d 397 (11th Cir. 1986).

The Plaintiff has failed to allege that any Defendant was in any way personally involved in any alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no allegation demonstrating that these Defendants were in any way involved in the actions he claims were constitutionally infirm. There are absolutely no facts to show that these Defendants personally participated in his claims, nor does the Plaintiff allege specifically how these Defendants violated his constitutional rights. As such, all Plaintiff's claims against these Defendants are due to be dismissed.

### H. Defendants Are Immune from Punitive Damages

In addition, all Defendants are immune from punitive damages. The Plaintiff's Complaint can be interpreted as requesting punitive damages; however, Ala. Code § 6-11-26 (1975) states, in relevant part, that "punitive damages may not be awarded against the State of Alabama or any county or municipality thereof." As discussed above, the Houston County Sheriff and his staff are executive officers of the State of Alabama. Therefore, any suit against the Houston County Sheriff and his staff is a suit against the State of Alabama, and thus, any claims for punitive damages against these Defendants are barred by Alabama statute.

### III. SUMMARY JUDGMENT STANDARD.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. *Greason v. Kemp*, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only reasonable

inferences with a foundation in the record inure to the nonmovant's benefit. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves*, 530 U.S. at 151, *quoting* 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[1] "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) *quoting Massachusetts School of Law v. American Bar*, 142 F.3d 26, 40 (1st Cir. 1998).

## IV.   ANSWER

The Defendants deny each and every allegation made by the Plaintiff against them. In addition, Defendants assert the affirmative defenses of qualified and absolute immunity regarding the Plaintiff's federal law claims against them, and, insofar as the Plaintiff's Complaint may be construed to make claims against them pursuant to Alabama law, they assert the defense of sovereign immunity to such claims.

## V.   MOTION FOR SUMMARY JUDGMENT

The Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment and grant unto them the same.

---

[1] Although *Reeves* was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review, relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves*, 530 U.S. at 150, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## VI.  CONCLUSION

Defendants deny each and every allegation made by the Plaintiff in the Complaint. The Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

Respectfully submitted this 22nd day of November 2019.

**s/C. Richard Hill, Jr.**
C. RICHARD HILL, JR. (HIL045)

**s/Ashley H. Freeman**
ASHLEY H. FREEMAN (FRE 044)

OF COUNSEL:
Capell & Howard, P.C.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8043
Facsimile: (334) 241-8243
Email:  rick.hill@chlaw.com
            ashley.freeman@chlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of November 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and have placed a copy of it in the United States Mail, postage prepaid to the following:

Brandon Brown
Kilby Correctional Facility
P.O. Box 150
Mount Meigs, AL  36057-0150

**s/C. Richard Hill, Jr.**
OF COUNSEL